UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JAMAAL ALI BILAL,

     Plaintiff,

v.                              Case No.  3:23cv4754-TKW-HTC

JEFFREY BENOIT, et al.,

     Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff filed this case in state court against multiple Defendants who were involved in proceedings that resulted in his civil commitment from 1999 to 2019 under Florida's Involuntary Civil Commitment of Sexually Violent Predators (SVP) Act, Fla. Stat. §§ 394.910–394.932.[1]   After removing this case to federal court, Defendant Escambia County Sheriff's Office (ECSO)[2] and Defendant Dr. John Hodges, the only two served Defendants, filed motions to dismiss, ECF Docs. 17 &

---

[1] The SVP Act, also known as the "Jimmy Ryce Act," was enacted in Florida "to create a civil commitment procedure for the long-term care and treatment of sexually violent predators."  Fla. Stat. § 394.910.  Those found to be sexually violent predators are "committed to the custody of the Department of Children and Families for control, care, treatment, and rehabilitation of criminal offenders, until such time as the person's mental abnormality or personality disorder has so changed that it is safe for the person to be at large."  Fla. Stat. § 394.917.

[2] Although the Sheriff's Office removed the action, the proper Defendant is the Sheriff.  *Bethel v. Escambia Sheriff's Off.*, 2006 WL 3709621, at *1 (N.D. Fla. Dec. 14, 2006) ("In Florida, there is no such legal entity as the 'Escambia County Sheriff's Department.'").

23, to which Plaintiff responded in opposition.  ECF Docs. 22, 28.  Plaintiff also filed two motions to remand.  ECF Docs. 9, 29.

After considering the parties' filings, the undersigned recommends: (1) the motions to remand be denied as moot; (2) the motions to dismiss be granted to the extent that Plaintiff's federal law claims should be dismissed with prejudice; (3) the federal law claims against the unserved Defendants be dismissed with prejudice as frivolous; and (4) the Court decline to exercise supplemental jurisdiction over the state law claims and remand them to state court for further proceedings.

## I.    Background

Plaintiff's amended complaint contains a litany of claims, some of which date back to the 1980s and all of which take issue with Plaintiff's prior state court criminal and civil proceedings, which eventually led to his civil commitment.  As will be discussed below, many, if not all, of the issues Plaintiff raises here were raised in one of Plaintiff's many previous suits.  Indeed, this lawsuit appears to be a culmination of how Plaintiff perceives the state and federal courts have failed him.

In the amended complaint,[3] Plaintiff names as Defendants eight mental health

---

[3] Plaintiff has filed a document titled "Judicial Notice of Filing the Correct Copy of the March 4, 2023 Amended Complaint which added Defamation Claim," which asks the Court to accept the attached complaint as the operative pleading.  ECF Doc. 20.  The undersigned has reviewed the attached complaint, ECF Doc. 20-1, and finds, consistent with the title of Plaintiff's Notice, that the proposed complaint simply adds a state law defamation claim.  The addition of the defamation claim would not affect the determination that Plaintiff's federal claims are frivolous and his state law claims should be remanded to state court.

professionals who either worked at the Florida Civil Commitment Center (FCCC) or evaluated Plaintiff as part of his commitment: Drs. Jeffrey Benoit, John Hodges, Ted Shaw, Gregory Pritchard, Karen Parker, Donald Sawyer, Danielle Koskey, and Carole DePass. The complaint also names as Defendants the Secretary of the Department of Children and Families (DCF), the ECSO, Kristen Kanner (Director of the DCF's SVP-Program), Mike Steele (an investigator with the U.S. Navy), Bill Davis Jr. (a deputy with the ECSO), Mark Inch (Secretary of the Florida Department of Corrections (FDOC)), Ashley Moody (Attorney General of Florida), and Thomas Keith (an assistant federal public defender). The amended complaint sets forth the following factual allegations, which are accepted as true for purposes of this Report and Recommendation. Also, for completeness, the undersigned has included information obtained from Plaintiff's other judicial proceedings, which Plaintiff references in the amended complaint,[4] and which are pertinent to understanding Plaintiff's claims.

In June 1982, Plaintiff worked as a civilian on Naval Air Station Pensacola (NASP), which required him to register his vehicle with the base's pass and tag office. On June 20, 1982, ECSO employee Bill Davis, Jr., asked Navy investigator

---

[4] Pursuant to Fed. R. Evid. 201, the Court may take judicial notice of the filings in various federal and state court cases Plaintiff has been involved with. *See Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F.3d 649, 652 (11th Cir. 2020) (holding a district court could properly take judicial notice of state court dockets).

Mike Steele for Plaintiff's home address and telephone number for use in a criminal investigation. Steele provided Davis the information from NASP's vehicle registration records. Plaintiff was subsequently "arrested at his home for [a] rape against Brenda Smith he never committed." Judge Rowley denied a motion to suppress involving the "Privacy Act issue" but "never addressed the Posse Comitatus Act violations inherent with the federal government's illegal involvement with [the] procurement of Plaintiff's arrest." If Judge Rowley had addressed the violation, Steele would have been criminally charged, and Plaintiff "would have won his motion to suppress and been freed[.]" Instead, Plaintiff pleaded guilty to sexual battery and served a 3-year sentence.[5]

In 1995, Plaintiff was charged with making harassing phone calls. Plaintiff was not convicted of this offense, but while he was detained, he got into a fight with two jail employees. As a result, he was convicted of battery on a law enforcement officer and received a roughly 3.5-year sentence. Plaintiff wanted to file an appeal, but the judge "never assigned [trial counsel] to handle the appeal."

Plaintiff then filed a petition for writ of habeas corpus in this Court. *See Bilal v. Moore*, N.D. Fla. Case No. 3:98cv179-LC. The Court appointed Defendant Keith to represent Plaintiff for part of the habeas proceedings. *Id.*, ECF Docs. 87, 100. On

---

[5] Plaintiff's first trial ended with a hung jury. ECF Doc. 16 at 8. He was convicted at the second trial, but the conviction was overturned on appeal because certain hearsay testimony was improperly admitted into evidence. *See Burton v. State*, 442 So.2d 355 (First DCA 1983).

June 9, 1999, this Court conditionally granted the writ and directed the State to give Plaintiff an opportunity to file a belated appeal within 60 days; if Plaintiff was not afforded the opportunity to belatedly appeal, the writ would be granted. *Id.*, ECF Doc. 151. On August 6, 1999, Plaintiff filed a belated appeal with the First District Court of Appeal. *Id.*, ECF Doc. 191 at 2, 10, 13. However, because Plaintiff's prison sentence expired on August 26, 1999, he decided not to pursue the appeal and voluntarily dismissed it. *Id.*, ECF Docs. 191, 203, 205.

Despite getting habeas relief, Plaintiff argued the writ should not have been conditional and appealed the judgment. *Id.*, ECF Docs. 155, 169, 184 (dismissing appeal). Additionally, Plaintiff moved for this Court to issue the writ and vacate his underlying criminal convictions, claiming the belated appeal was null because his sentence had since expired. ECF Doc. 193. After directing the State to show cause, this Court concluded the State complied with the June 9, 1999, Order. *Id.*, ECF Doc. 212 ("There are no issues remaining to be litigated. Petitioner has been afforded the opportunity to appeal his criminal incarceration. What happens or happened thereafter is not a matter properly before this Court. This case is closed.").

After the conditional writ was issued, but while Plaintiff's federal habeas case was still open, Drs. Benoit and Hodges visited Santa Rosa Correctional Institution to evaluate Plaintiff for civil commitment under the SVP Act. Plaintiff alleges officials from the Escambia County Jail erroneously inserted Eddie Lee Banks'

convictions for child rape into his clinical file, which were then considered by Drs. Benoit, Parker, Hodges, Pritchard, and Sawyer during their evaluations and contributed to his civil commitment. Similarly, Plaintiff asserts Drs. DePass and Koskey knew or should have known Banks' convictions did not belong in his clinical file, but they failed to correct the error. The State filed a petition to commit Plaintiff as an SVP on August 25, 1999. *See* N.D. Fla. Case No. 3:00cv101-LC, ECF Doc. 4 at 7-10.

In 2001, Plaintiff entered into a settlement agreement with the State, wherein he acknowledged the State could present clear and convincing evidence he satisfied the commitment criteria of the SVP Act and agreed to voluntarily enter the treatment program at the FCCC, in exchange for the State allowing him to receive biannual reviews of his SVP status. Plaintiff, however, asserts Florida breached the settlement agreement by failing to provide the required reviews. Plaintiff also alleges that during his civil commitment he was, at times, improperly housed in the FDOC and county jails; specifically, he takes issue with the time he spent at Reception Medical Center, the Desoto County Jail, and the Escambia County Jail. His civil commitment ended in May 2019.

Based on the events above, Plaintiff seeks to bring a variety of state and federal claims against Defendants, including for breach of the settlement agreement, violation of the Fourteenth Amendment, defamation, and malicious prosecution.

## II.    Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).    The Court must liberally construe Plaintiff's *pro se* allegations, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), but conclusory allegations and legal conclusions couched as factual allegations are not entitled to a presumption of truth.  *Iqbal*, 556 U.S. at 681; *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

In addition, "a district court has the inherent power to dismiss an action that is 'so patently lacking in merit as to be frivolous.'"  *Guthrie v. U.S. Gov't*, 618 F. App'x 612, 617 (11th Cir. 2015) (quoting *Jefferson Fourteenth Assocs. v. Wometco de Puerto Rico, Inc.*, 695 F.2d 524, 526 & n.3 (11th Cir. 1983)); *see also Davis v. Kvalheim*, 261 F. App'x 231, 234-35 (11th Cir. 2008) (affirming district courts' inherent authority to dismiss frivolous claims *sua sponte*).  "A claim is frivolous if it is without arguable merit either in law or fact."  *Bilal v. Driver*, 251 F.3d 1346, 1349 (11th Cir. 2001) (citation omitted).

## III.    Discussion

### A.    Motions to Remand

Plaintiff has filed two motions to remand, arguing: (1) the ECSO did not

obtain the other Defendants' consent for the removal; (2) Hodges assented to state court jurisdiction by filing a motion to dismiss there; (3) he filed a second amended complaint in state court before receiving the ECSO's notice of removal; and (4) his state law defamation claims predominate over any federal claims. ECF Docs. 9, 29.

Pursuant to 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). The procedure for removing a case is set forth in § 1446(b), which provides:

> The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

28 U.S.C. § 1446(b)(1).

### i.    Unanimity

Plaintiff first argues that remand is appropriate because the ECSO did not obtain Defendant Hodges' consent before removing this action to federal court. ECF Doc. 9 at 1-2. As set forth above, a defendant seeking to remove a case from state to federal court must comply with certain procedural requirements. *See* 28 U.S.C. §

1446. When a defendant removes a case to federal court based on federal-question jurisdiction, "all defendants who have been properly joined and served must join in or consent to the removal of the action." 28 U.S.C. § 1446(b)(2)(A).

Here, Defendant Hodges was served on February 8, 2023, ECF Doc. 6-58, and Defendant ECSO was served on February 10, 2023, ECF Doc. 6-53. Although the ECSO did not have Hodges' consent at the time it filed its notice of removal on March 2, 2023, ECF Doc. 1, it obtained his consent through email on March 10, 2023, ECF Doc. 6-61, and Hodges filed a formal notice of consent with the Court on March 22, 2023, ECF Doc. 13.[6]

The undersigned finds the ECSO satisfied the unanimity requirement of 28 U.S.C. § 1446(b)(2)(A) because it obtained Hodges' consent to removal within 30 days of being served. Courts have held a removing defendant may obtain the consent of earlier-served defendants after filing a notice of removal. *See Flournoy v. Dowd*, 2021 WL 6328352, at *1 (N.D. Fla. Oct. 25, 2021) (noting the "unanimity rule has been construed to require the non-removing defendant(s) to consent to removal within the statutory 30-day removal period" which "runs from the date the later-served defendant was served") (citations omitted). Indeed, the Eleventh Circuit has

---

[6] At the time it filed its notice of removal on March 2, the ECSO was unaware any other Defendant had been served; while Hodges' counsel filed a notice of appearance and motion to dismiss in state court on February 27, the state court docket was not updated to reflect these filings until several days later. ECF Doc. 6-61.

affirmed a district court's denial of a motion to remand when a defendant did not join a notice of removal but later opposed remand, noting "[a] technical defect related to the unanimity requirement may be cured by opposing a motion to remand prior to the entry of summary judgment." *Stone v. Bank of New York Mellon, N.A.*, 609 F. App'x 979, 981 (11th Cir. 2015). Thus, the ECSO's failure to obtain Hodges' consent at the time of removal does not require remand.

Plaintiff also suggests the ECSO was required to obtain the consent of the unserved Defendants before removal.[7] ECF Doc. 9 at 2. This is incorrect, as consent is only required from Defendants "who have been properly joined *and served*." 28 U.S.C. § 1446(b)(2)(A) (emphasis added); *see also Johnson v. Wellborn*, 418 F. App'x 809, 815 (11th Cir. 2011) ("The requirement that there be unanimity of consent in removal cases with multiple defendants does not require consent of defendants who have not been properly served.") (citation omitted).

### ii.    Hodges' Assent to State Jurisdiction

Plaintiff next argues Hodges assented to this case proceeding in state court by filing a motion to dismiss there. ECF Doc. 9 at 2. This argument is without merit; Hodges' filing of a motion to dismiss in state court does not deprive the ECSO of its right to seek removal. *See Bailey v. Janssen Pharmaceutica, Inc.*, 536 F.3d 1202,

---

[7] While summonses were issued by the state court for all Defendants, nothing in the record indicates any Defendant other than Hodges or the ECSO has been served.

1207 (11th Cir. 2008) ("The unanimity rule alone does not command that a first-served defendant's failure to seek removal necessarily waives an unserved defendant's right to seek removal[.]").

### iii.    Plaintiff's Second Amended Complaint

Plaintiff also asserts he filed a second amended complaint in state court on March 4, before he received the ECSO's March 2 notice of removal.  ECF Doc. 9 at 3.  It is unclear what effect Plaintiff believes the filing of the second amended complaint had on the ECSO's ability to remove this case; the cases he cites in this section of his motion discuss how a plaintiff's actions following removal may impact their ability to seek remand.  Plaintiff's filing of a second amended complaint in state court does not prevent the ECSO from removing this case from state to federal court.

### iv.    Supplemental Jurisdiction

Plaintiff argues the Court should decline to exercise supplemental jurisdiction over his state law claims because they predominate over his federal claims.  *See* ECF Doc. 9 at 3-6 (citing *Longino v. Martinez*, 2022 WL 3279539 (S.D. Fla. Aug. 11, 2022) (remanding plaintiff's state-law legal malpractice claim to state court because it predominated the federal claims but retaining jurisdiction over the federal claims)).  Under 28 U.S.C. § 1367, district courts may decline to exercise supplemental jurisdiction over a state law claim if: (1) the claim raises a novel or complex issue of State law; (2) the claim substantially predominates over the claim or claims over

which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

The Court need not address this argument, however, because Plaintiff's federal law claims are subject to dismissal and, thus, the Court should decline to exercise supplemental jurisdiction over his state law claims pursuant to 28 U.S.C. § 1367(c)(3) and remand them to state court. *See Myers v. Cent. Fla. Invs., Inc.*, 592 F.3d 1201, 1226 (11th Cir. 2010) ("[F]ederal district courts in removal cases must remand, rather than dismiss, state claims over which they decline to exercise supplemental jurisdiction[.]").  Also, because Plaintiff's state law claims should be remanded to state court, but on a different basis than he argues, his motions to remand should be denied as moot.  *See McCool v. Austal USA, LLC*, 2022 WL 4373611 (S.D. Ala. Aug. 16, 2022), *report and recommendation adopted*, 2022 WL 4372358 (S.D. Ala. Sept. 21, 2022) (mooting plaintiffs' motion to remand after determining their sole federal claim should be dismissed with prejudice, the Court should decline to exercise supplemental jurisdiction, and the remaining state law claims should be remanded to state court).

## B.    Federal Law Claims

Plaintiff's amended complaint does not clearly describe what claims he is bringing, which Defendants those claims are brought against, or what facts support

those claims.  The undersigned has liberally construed the amended complaint and considered the relevant and non-conclusory facts to identify what it considers to be the potential federal claims Plaintiff may be attempting to bring.  As discussed below, those are: (1) claims for malicious prosecution under 42 U.S.C. § 1983; (2) claims under the Supremacy Clause; (3) claims under the Fourteenth Amendment regarding where Plaintiff was housed during his commitment; and (4) claims against Defendant Keith regarding his representation during the federal habeas proceeding in 1999.

### i.  *Heck*

Plaintiff alleges Defendants are liable for malicious prosecution based on misconduct which resulted in his civil commitment.  He asserts his civil commitment was invalid because: (1) he is innocent of the conviction for sexual battery in 1982; (2) he was not lawfully incarcerated when the State commenced civil commitment proceedings; and (3) mental health professionals improperly considered the convictions of Eddie Lee Banks when recommending him for civil commitment.

However, these claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).  Under *Heck*, the Court must dismiss a complaint brought pursuant to 42 U.S.C. § 1983, when the civil rights action, if successful, would necessarily imply the invalidity of a plaintiff's detention, unless the plaintiff demonstrates the reason for the detention has been reversed on direct appeal, expunged by executive order,

declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus under 28 U.S.C. § 2254. *Id.* at 486-87. Courts in the Eleventh Circuit and elsewhere have applied *Heck* to civil commitment proceedings. *See Fetzer v. Sec'y, Fla. Dep't of Children & Families*, 2020 WL 5625172, at *1 (11th Cir. Aug. 13, 2020) (affirming district court's dismissal of civil detainee's claim for monetary damages because, if successful, it would imply the invalidity of his involuntary civil commitment under Florida's SVP Act); *Huftile v. Miccio-Fonseca*, 410 F.3d 1136, 1138-41 (9th Cir. 2005) (*Heck* barred suit challenging the validity of a mental health assessment underlying the plaintiff's civil commitment, because that commitment had not been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus).

Here, all of Plaintiff's claims related to his commitment necessarily imply the invalidity of his detention under the SVP Act. His allegation that he is innocent of the 1982 sexual battery implies that his conviction is invalid and that his civil commitment is invalid, because the sexual battery conviction was cited by the State as the sexually violent offense necessary for commitment under the SVP Act. *See* N.D. Fla. Case No. 3:00cv101-LC, ECF Doc. 4 at 7-10 (State's August 25, 1999, petition for commitment as an SVP). Likewise, Plaintiff's allegation that he was not

lawfully incarcerated when the State sought commitment is *Heck*-barred because the SVP Act "requires that an individual be in lawful custody when the State takes steps to initiate civil commitment proceedings in order for the circuit court to have jurisdiction to adjudicate the commitment petition." *Larimore v. State*, 2 So.3d 101, 103 (Fla. 2008). And Plaintiff's allegations regarding the State's consideration of Banks' convictions are *Heck*-barred because Plaintiff specifically alleges he would not have qualified for commitment if those convictions had not been considered by Defendants during their evaluations. *See, e.g.*, ECF Doc. 16 at 12 (alleging Defendants' failure to remove the Banks' convictions from Plaintiff's treatment files was the proximate cause of his civil commitment); *id.* at 17 (alleging Banks' convictions increased Plaintiff's actuarial scores to the point he qualified for civil commitment). Because all these claims necessarily imply Plaintiff should not have been detained under the SVP Act, they must be dismissed under *Heck* and its progeny.

In *Spencer v. Kemna*, 523 U.S. 1, 21 (1998), Justice Souter suggested in a concurring opinion an exception to the *Heck* bar may apply when a plaintiff is no longer in custody and habeas relief is unavailable. However, "neither the Supreme Court nor [the Eleventh Circuit] has applied this exception in a published opinion." *Butler v. Georgia*, 2022 WL 17484910, at *4 (11th Cir. Dec. 7, 2022). And the Eleventh Circuit has applied *Heck* to plaintiffs who were not in custody in several

unpublished opinions. *See, e.g.*, *Reilly v. Herrera*, 622 F. App'x 832 (11th Cir. 2015) (concluding *Heck* applied to claim brought by plaintiff released from custody because he "had ample time to pursue an appeal or other post-conviction remedies on the supervised release revocation" during his three-year term of imprisonment and doubting "Justice Souter intended to propose a broad exception to include prisoners who had the opportunity to challenge their underlying convictions but failed to do so"); *Vickers v. Donahue*, 137 F. App'x 285, 289-90 (11th Cir. 2005) (concluding a plaintiff's claim that a probation officer falsified an affidavit that led to the revocation of his probation was *Heck*-barred despite fact he was no longer in custody and habeas relief was no longer available).

The undersigned finds the reasoning in the *Reilly* and *Vickers* decisions persuasive and concludes the exception described in *Spencer* does not apply here because, although Plaintiff has been released, he previously had an adequate opportunity to challenge his civil commitment detention. Indeed, during his roughly 20-year detention, Plaintiff launched a multitude of challenges to his commitment in state and federal court, by filing direct appeals of the orders denying him release as well as habeas petitions. *See, e.g.*, *In re: the Commitment of John L. Burton AKA Jamal Ali Bilal*, Escambia Cty. Case No. 1999 CA 001507; *Bilal v. Dep't of Children & Family Servs.*, N.D. Fla. Case No. 3:00cv101-LC; *Bilal v. Regier*, N.D. Fla. Case No. 3:02cv362-LC-MD.

None of these challenges resulted in a determination that Plaintiff's detention was invalid for the reasons alleged in this action. Instead, Plaintiff was released in May 2019 based on a finding that the State could no longer show by clear and convincing evidence that Plaintiff's mental condition remained such that it was not safe for him to be at large and that, if released, he was likely to engage in acts of sexual violence. *See In re: Bilal*, Escambia Cty. Case No. 1999 CA 001507 (May 23, 2019, order of release). Accordingly, the malicious prosecution claims related to Plaintiff's civil commitment are barred by *Heck*.

### ii.    Statute of Limitations

In addition to being *Heck* barred, Plaintiff's malicious prosecution claims are also barred by the statute of limitations. In Florida, claims brought under § 1983 are subject to a 4-year statute of limitations. *See Ellison v. Lester*, 275 F. App'x 900, 901-02 (11th Cir. 2008) ("[T]he four-year statute of limitations under Fla. Stat. § 95.11(3) applies to § 1983 claims arising in Florida."). "The statute of limitations on a section 1983 claim begins to run when 'the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights.'" *Van Poyck v. McCollum*, 646 F.3d 865, 867 (11th Cir. 2011) (quoting *McNair v. Allen*, 515 F.3d 1168, 1173 (11th Cir. 2008)). Thus, "[t]he statute of limitations begins to run when the plaintiff knows, or should know: (1) that he has suffered the injury that forms the basis of his complaint; and (2) who has

inflicted an injury." *Rager v. Augustine*, 760 F. App'x 947, 950 (11th Cir. 2019) (citing *Chappell v. Rich*, 340 F.3d 1279, 1283 (11th Cir. 2003)).

Based on the foregoing, Plaintiff cannot assert a claim against ECSO Deputy Davis or Navy investigator Mike Steele for any conduct that took place in 1982 during the investigation of the sexual battery charge, as that occurred nearly 40 years before Plaintiff filed his initial complaint in May 2021.[8]

Plaintiff suggests that under the continuing violation doctrine his malicious prosecution claims did not accrue until May 2019, when his commitment ended. "The continuing violation doctrine permits a plaintiff to sue on an otherwise time-barred claim when additional violations of the law occur within the statutory period." *Ctr. for Biological Diversity v. Hamilton*, 453 F.3d 1331, 1334 (11th Cir. 2006) (citation omitted). "If a defendant's actions violate a plaintiff's rights on a repeated or ongoing basis, then a cause of action may be timely even if the first violation took place outside the statute of limitations." *Doe as Next Friend of Doe #6 v. Swearingen*, 51 F.4th 1295, 1305 (11th Cir. 2022) (citation omitted). But a "prior violation of a plaintiff's constitutional rights is not a continuing violation simply because its effects linger into the present. Instead, we must 'distinguish[ ] between the present consequence of a one time violation, which does not extend the

---

[8] To the extent Plaintiff seeks to hold Steele liable for violating the Posse Comitatus Act, 18 U.S.C. § 1385, he cannot do so because it is a criminal statute that does not provide a private cause of action. *See Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 511 (2d Cir. 1994).

limitations period, and the continuation of the violation into the present, which does.'" *Id.* (quoting *Calloway v. Partners Nat'l Health Plans*, 986 F.2d 446, 448 (11th Cir. 1993)).

Plaintiff relies on *Smith v. Shorstein*, 217 F. App'x 877 (11th Cir. 2007) to support his continuing violation argument. Smith alleged he was illegally confined beyond the expiration of his prison sentence on February 21, 1999, so the defendants could not civilly commit him under the SVP Act, which requires the State to have lawful custody of the person for whom commitment is being sought. The court found his § 1983 claims did not accrue until April 15, 2002—the date he was released from his civil commitment—noting "[w]hen the violation alleged involves continuing injury, the cause of action accrues, and the limitation period begins to run, at the time the unlawful conduct ceases." *Id.* at 881.

The undersigned finds *Smith* to be distinguishable. Here, the record shows Plaintiff's release date was August 26, 1999, one day after civil commitment proceedings were initiated.[9] Also, Plaintiff stipulated to his commitment in the

---

[9] Plaintiff's amended complaint alleges that when Judge Collier issued the conditional writ on June 6, 1999, his "prison sentences were already expired." ECF Doc. 16 at 11. This allegation is inconsistent with the filings in N.D. Fla. Case No. 3:98cv179-LC. *See id.*, ECF Doc. 186 at 2 (Defendant Keith's report to the court, stating "The sentences imposed in case numbers 89-485[6] and 95-5427 expired on or about August 26, 1999."). Instead, the allegation that Plaintiff's sentences expired before August 26, 1999, appears to be based on Plaintiff's belief that either: (1) he should have been released on August 9, 1999, pursuant to the conditional writ, *see id.* (stating it is Plaintiff's "position that he should have been released on or about August 9, 1999, when the State of Florida failed to grant him a belated appeal within 60 days of this court's order"); or (2)

settlement agreement and Judge Terrell noted in his October 10, 2013, order denying release that "[t]he petition for commitment was filed while Mr. Bilal was serving a sentence for an offense that was not sex related." Thus, unlike Smith, Plaintiff cannot show he was not in lawful custody on August 26, 1999. His belief that his sentences were expired simply has no factual or legal merit.

Also, Plaintiff cannot invoke the continuing violation doctrine because Plaintiff clearly knew about the Defendants' alleged consideration of Banks' convictions at least by October 2007, as he filed a motion in his civil commitment case describing it. *See In re: Bilal*, Escambia Cty. Case No. 1999 CA 001507 (motion for immediate release, docket entry dated November 13, 2007). Also, Plaintiff's commitment was not continuously based on the presence of Banks' convictions in his clinical file. Indeed, on November 21, 2007, Judge Terrell issued an order in Plaintiff's commitment case which stated: (1) "That records pertaining to Eddie Lee Banks are not those of [Plaintiff] and shall not be considered in the review of the respondent's commitment status[;]" and (2) "If Eddie Lee Banks' criminal convictions were considered in the initial or intervening assessments of Mr. Burton/Bilal's qualification for commitment, then Mr. Burton/Bilal shall

---

the sentences he received in his criminal cases were illegal, *see* N.D. Fla. Case No. 3:02cv362-LC-MD, ECF Doc. 100 at 8-9 n.1 (petition for writ of habeas corpus alleging the sentences in 89-4856 and 95-5427 were illegal habitual offender sentences and he should have received shorter sentences under the guidelines). However, those sentences have not been declared invalid.

immediately be reassessed without the Banks' convictions factored into any findings.  The Court and all counsel shall be provided a copy of any re-evaluation." *In re: Bilal*, Escambia Cty. Case No. 1999 CA 001507.

After Judge Terrell issued that order, he presided over a September 10, 2013, trial and Judge Boles presided over trials on March 2, 2016, and October 23, 2017, to consider whether Plaintiff continued to satisfy the criteria for commitment; the judges' orders denying Plaintiff's release did not rely on the Banks' convictions. *See id.* (orders dated October 11, 2013, March 7, 2016, and December 15, 2017).  Judge Terrell's November 2007 order, and Plaintiff's subsequent trials, sever any conceivable connection between Defendants' alleged consideration of the Eddie Lee Banks' convictions and Plaintiff's ongoing commitment.  *See Swearingen*, 51 F.4th at 1305 ("Only ongoing violations satisfy the continuing violation doctrine and remain timely despite accruing outside the statutory limitation period.").

### iii.   Supremacy Clause

Plaintiff raises two claims related to the Supremacy Clause: (1) the State was barred from commencing civil commitment proceedings while his federal habeas case was pending; and (2) the State was required to transfer him to a Veterans Affairs (VA) Medical Center after the VA authorized the transfer.

Both claims are without merit.  First, Plaintiff's federal habeas case related solely to whether he was given an opportunity to appeal his state criminal

convictions; neither the habeas case nor the Supremacy Clause had any effect on the State's ability to pursue Plaintiff's civil commitment.  Regardless, civil commitment proceedings were started *after* Judge Collier conditionally granted the petition, the appeal of that judgment had been dismissed, and the 60-day deadline for the conditional writ expired.  Moreover, Plaintiff could have sought a stay of the civil commitment proceedings.

Second, Plaintiff raised an identical claim regarding his potential transfer to a VA facility in a petition for writ of habeas corpus filed in this Court in 2015, which was rejected by this Court.  *See Bilal v. Carroll*, N.D. Fla. Case No. 3:14cv331-MCR-CJK.  As the Court noted when it denied Plaintiff relief: (1) "the question of whether petitioner should be transferred to a VA facility is purely a matter of state law" because "[w]hether § 394.4672(1) applies to SVP proceedings is a matter of state law, as is the question of whether an eligible person should be placed with a federal agency;" (2) "[t]he Supremacy Clause does not create federal rights;" and (3) "[t]here is no federal constitutional or statutory right for a veteran, who has been involuntarily committed to a state facility pursuant to a state civil commitment proceeding, to be placed at a VA facility." *Bilal v. Carroll*, 2015 WL 3620552, at *5 (N.D. Fla. May 6, 2015), *report and recommendation adopted*, 2015 WL 3622523 (N.D. Fla. June 9, 2015).

Furthermore, on March 9, 2005, Judge Terrell entered an order which noted

the parties and the court had researched Plaintiff's eligibility for treatment at a VA

facility and the court found it was not an available option for the court to consider.

*See In re: Bilal*, Escambia Cty. Case No. 1999 CA 001507 (March 9, 2005, order

attached to the State's November 30, 2009, status report to the First DCA).  Based

on the foregoing, the undersigned finds Plaintiff's references to the Supremacy

Clause are insufficient to state a viable federal claim.

### iv.    Detention in Prison and Jails

Plaintiff alleges his periodic detention in county jails and the FDOC between

1999 and 2019 violated the Fourteenth Amendment.  In support of this claim,

Plaintiff relies on the Eleventh Circuit's holding in *Bilal v. Geo Care, LLC*, 981 F.3d

903, 917 (11th Cir. 2020).  That case, however, does not support his current claims

because the facts here are distinguishable.

In *Geo Care*, the appellate court determined Plaintiff stated a Fourteenth

Amendment claim when he alleged he attended a one-day hearing related to his civil

commitment but was housed for one month at the Santa Rosa County Jail, where he

was placed in the confinement unit, subject to abuse by guards, and denied access to

mental health treatment, TV, phone calls, the law library, visitation, fresh air

exercise, canteen privileges, and religious services.  In contrast, here, the time

Plaintiff spent in jail was either related to a separate charge *or* was limited to the

time necessary for Plaintiff to attend court appearances.  Thus, the undersigned finds

Case 3:23-cv-04754-TKW-HTC    Document 30    Filed 04/21/23    Page 24 of 28

Page 24 of 28

Plaintiff has failed to state a constitutional claim for any period of non-FCCC confinement described in the complaint.

First, as stated above, a § 1983 claim has a 4-year statute of limitations. Thus, any Fourteenth Amendment claim based on Plaintiff's confinement in an FDOC facility or county jail before May 2017 is time-barred. This includes Plaintiff's confinement in an FDOC facility in 2016 and his confinement in the DeSoto County Jail in 2010. Moreover, it should be noted Plaintiff was confined in an FDOC facility in 2016 because he had been convicted of battery on an FCCC employee named Kilgo. ECF Doc. 16 at 15; *see also State v. Bilal*, DeSoto Cty. Circuit Court Case No. 2015 CF 000270. Similarly, Plaintiff was confined in the DeSoto County Jail in 2010 because he was facing charges for, and ultimately convicted of, practicing law without a license. ECF Doc. 16 at 15; *see also State v. Bilal*, DeSoto Cty. Circuit Court Case No. 2010 CF 000249.

Plaintiff also appears to raise a jail housing claim for the times he was detained at the Escambia County Jail for court appearances related to his civil commitment. ECF Doc. 16 at 21. The Escambia County Jail's website indicates Plaintiff was detained there: (1) from October 22, 2017, at 2:34 p.m. to October 24, 2017, at 6:32 a.m.; (2) from February 28, 2019, at 2:03 p.m. to March 1, 2019, at 8:30 a.m.; and (3) from May 22, 2019, at 2:56 p.m. to May 23, 2019, at 8:36 a.m. These dates correspond to Plaintiff attending a trial on October 23, 2017, and another trial that

began on March 1, 2019, and concluded on May 23, 2019. *See In re: Bilal*, Escambia Cty. Case No. 1999 CA 001507.

Plaintiff does not allege the conditions at the Escambia County Jail differed in any significant respect from the conditions at the FCCC. *See Lynch v. Baxley*, 744 F.2d 1452, 1461 (11th Cir. 1984) (civilly committed detainees "cannot be subjected to conditions of confinement substantially worse than they would face upon commitment"). More importantly, he was detained at the Jail for less than 40 hours on each of these occasions, and for less than 19 hours on two. Notably, his 40-hour detention at the Jail in October 2017 *includes* the time he spent attending trial on October 23. *See In re: Bilal*, Escambia Cty. Case No. 1999 CA 001507 (transcript of October 23, 2017, trial, docket entry dated April 12, 2018). These limited periods of detention, which allowed Plaintiff to attend proceedings related to his civil commitment, are of such short duration that they cannot be considered punitive and do not violate the Due Process Clause of the Fourteenth Amendment. Thus, Plaintiff has not stated a Fourteenth Amendment claim regarding his detention in either the FDOC or county jails.[10]

---

[10] The Santa Rosa County Jail's website indicates Plaintiff was detained there from September 9, 2013, to October 11, 2013, and from March 1, 2016, to March 3, 2016. Plaintiff previously filed an action regarding the 2013 detention and, in any event, any claims related to either the 2013 or 2016 periods of detention are barred by the 4-year statute of limitations, as Plaintiff filed the instant case in May 2021.

v.    **Assistant Federal Public Defender**

Plaintiff alleges Defendant Keith's legal malpractice as an assistant federal public defender violated his right to effective assistance of counsel, his due process rights under the Fifth and Fourteenth Amendments, and the Federal Tort Claims Act (FTCA).[11]   Because Keith represented Plaintiff in a federal habeas proceeding in 1999, all such federal claims are barred by either the 4-year statute of limitations applicable to *Bivens* claims, or the 2-year statute of limitations applicable to claims under the FTCA.  *See Villalona v. Holiday Inn Express & Suites*, 824 F. App'x 942, 946 (11th Cir. 2020) (noting the same 4-year statute of limitations applies to a *Bivens* action as to a § 1983 action in Florida); 28 U.S.C. § 2401(b) (stating a 2-year statute of limitations applies to FTCA claims).  Furthermore, Keith would not be the proper Defendant for any claim brought under the FTCA.

## IV.    **Conclusion**

After a thorough review of Plaintiff's allegations, the undersigned concludes all of Plaintiff's federal claims lack merit, as they are either *Heck*-barred, time-barred, or lack a legal basis.  Defendants' motions to dismiss, therefore, should be granted to the extent that Plaintiff's federal claims should be dismissed with prejudice.  Likewise, all federal claims against the unserved Defendants should be

---

[11] Plaintiff cites the Westfall Act, but that law simply provides individual federal employees immunity from tort claims arising out of their employment; instead, the United States is substituted as the defendant in such an action and it is governed by the FTCA.

dismissed with prejudice, *sua sponte*, on the same grounds.  Finally, the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims and remand them to the state court from which this case was removed.

Accordingly, it is RECOMMENDED:

1.    That Defendant Hodges' motion to dismiss, ECF Doc. 17, be GRANTED to the extent that all federal claims against Hodges should be DISMISSED WITH PREJUDICE.

2.    That Defendant ECSO's motion to dismiss, ECF Doc. 23, be GRANTED to the extent that all federal claims against the ECSO should be DISMISSED WITH PREJUDICE.

3.    That, pursuant to the Court's inherent authority, all federal claims against the unserved Defendants should be DISMISSED WITH PREJUDICE as frivolous.

4.    That Plaintiff's motions to remand, ECF Docs. 9 & 29, be DENIED AS MOOT.

5.    That Defendant ECSO's motion to strike Plaintiff's corrected amended complaint, ECF Doc. 26, be DENIED AS MOOT.

6.    That Plaintiff's state law claims be REMANDED to the Circuit Court of the First Judicial Circuit in and for Escambia County, Florida.

At Pensacola, Florida, this 21st day of April, 2023.

*/s/ Hope Thai Cannon*

**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within **fourteen (14) days** of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u>  An objecting party must serve a copy of its objections upon all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1.